Good morning, your honors, counsel, and may it please the court, my name is Michael Gomez from the Office of the Federal Public Defender on behalf of my client, Mr. Albert Pinedo, and I'd like to request four minutes for rebuttal. Your honors, as we laid forth in our brief, Mr. Pinedo was denied a fair trial in four by the seating of two jurors who expressed many areas of potential or actual bias, adverse to Mr. Pinedo's position and adverse to the cornerstone, the very basic premise of his anticipated defense. And after those biases were revealed, did not make an unequivocal commitment to remain fair and impartial in evaluating the evidence in this case. Let me ask you this, I think that's probably, obviously we'll give you time to talk about the others, but I think it's probably the strongest issue because if that, if you're correct on that, we have to reverse, right? Yes, your honor. Okay, so you've got jurors 17 and 30. And my understanding is, and I think you, you used all your peremptories, so these were, you were requesting them to be excused for cause. Yes, your honor. Okay, and so you objected at the time. And now my understanding is also that the jurors did a written questionnaire before they had to end court questioning, correct? Correct, your honor. All right, so, and just going, I don't think I'm going out on a limb, the subject matter of this case is not the, you know, jurors don't jump up and down and say, hey, I really want to be on a case that involves sex with minors and all of that. So, you've got, and contained in the questionnaire, have you been a trial judge and actually having prosecuted these cases? It's certainly not, would you concede it's not uncommon for jurors when they hear what this case is about, to say, oh, that's gross, I don't want to be on that kind of case, and I'm against adults having sex with minors. Certainly not. So, that's, we're dealing with subject matter, you know, a lot of people would much rather be on a murder case, because some people maybe deserve killing, but, you know, but on the, but most people exclaim rather adamantly that they, this is the case they don't want to be on. So, we have to, so, go through with me, just because someone says, hey, this is a gross case, or, and, I wasn't, it was interesting in this, I wasn't, I think the defense was, I haven't seen this defense before, wherein it's role playing that, because your client was a previously convicted sex offender that did counseling, and as part of his counseling, they say, well, if you can't be rehabilitated, here are some of the tools that you can use to satisfy yourself from reoffending. So, his whole defense is, I wasn't really going to do this, I'm acting out, I'm acting out of fantasy, is that right? Yes, Your Honor. Okay. So, tell me. It's a coping strategy. Coping strategy, so that you don't reoffend. Correct. And then, obviously, these kind of cases are a little bit, from a prosecution standpoint, they're not, he wasn't really going to have sex with a minor, because it was a police thing, and so the person that he was actually having all these rather kind of explicit texts with was a police officer, right? It wasn't a kid. Correct. So, they're kind of different, they're kind of odd cases, and they're the type of cases that we would expect jurors to have an initial, visceral response to. So, tell me why, at the end of this, these jurors, and you also have to, we also have to give deference to the judge that's actually looking at these people and deciding what I believe, and making a call on this. So, tell me, give me your best argument on this. Okay. Well, Your Honor, raises many great points. The first one I'll start with is, this is a constitutional requirement. We're not asking for anything out of the ordinary. This is the Sixth Amendment, guarantees and accused the right to a public and speedy trial by an impartial jury. So, the fact that the subject matter is sensitive, the fact that this case involves homosexuality, which a lot of people still have negative biases against, that it involves sexual fantasy, age role play, sexually explicit communications, it makes it a little more difficult, as Your Honor pointed out, to find jurors who can serve on this jury. But that doesn't mean we throw away the Constitution. We don't throw away the defendant's right to an impartial jury. Another point I'd like to make is that this court's case law is very clear in this area. What we know from this court's decisions in Puget Sound and Gonzales, that it's perfectly fine for jurors to have these reactions. We're not saying that people should come in agreeing with child sex abuse. We're not saying that people should agree with sexual fantasy. We're saying that if you do have these feelings, you have to also follow that up with an unequivocal commitment to remain fair and impartial. So let me focus you on something, and I'm also going to ask your friend about it. First, you only need one, right? Correct. Okay. So I'm going to concentrate on Juror 30. So at almost the end, on ER 523, the court asks the juror, well, let me ask you, you don't think you could be fair. Is it a possibility you could be fair? I will try my best, and you will try to follow the court's instructions. Yes. Is that enough to meet the constitutional test, that there is a possibility that the juror will be fair, and that the juror will try to follow the court's instructions? No, Your Honor, that is not sufficient. Under this court's very own case law, in Puget Sound and Gonzales, which state the aspirational statements, such as, I might be able to put that aside. I would want to put away, put aside my personal feelings, but I don't know if I could. I would try to be fair, or I will try to, right? I will try to. Such aspirational statements, a possibility of fairness, is not what the Constitution demands. It demands an unequivocal commitment, and unequivocal, we're asking this court to just reiterate that unequivocal means unequivocal. There shouldn't be a debate. Going back a page, I believe Ms. Dixler was the defense counselor, right? Correct, yes. And she said, given just the charge itself, you feel like your feelings about that charge are too strong, and you wouldn't be able to put those feelings aside. The answer, I will try to, but I don't know. Is that enough to satisfy the Sixth Amendment? No, Your Honor. It's exactly the same types of statements that this court found to be insufficient in Puget Sound and Gonzales. And I'd like to point the court to the juror 30's final, what we're, when you're ended on juror 30 finally saying, well, I will try my best. Right, right after she said, it's a she, right? Yes. Right after she said that the questions were pressuring her. Not that she was feeling pressured, because she was hesitant, a little uncomfortable being on the stand, but she also never unequivocally committed before that. But she said in response to the prosecutor's question, do you still feel that way? And this is on 524, why are you guys pressuring me? I don't know what to say. How does that fit in with your Sixth Amendment analysis? Well, Your Honor, that is, you know, the juror may have felt pressured in that moment, but that doesn't mean we discount her statements. That doesn't mean we look to the, if we look at the rest of the record, the statements that Your Honor pointed out, which came before the witness, or the juror said she felt pressured, there was an unequivocal commitment to remain fair and impartial before that, and there wasn't one after. And that's the- Can I ask you a question? Yes. With respect to the juror questionnaire, wasn't, was the response of, you know, representation that I could be impartial, was that unequivocal? The questionnaire itself. Your Honor, the questionnaire itself did ask a general fairness-related question that the witnesses could, or the, I'm sorry, the jurors could either check yes or no next to. And what was checked? And the witness, I'm sorry, I was going to say the witness, the juror did check yes next to that. I can be fair. I can be impartial. Yes. And I'd like to point out that- The opportunity for voir dire, isn't that a matter of sort of, you know, very much within the province of the, of the district court judge? I mean, the Supreme Court has said that the deference with respect to jury selection is at its pinnacle. Yes, Your Honor. In those situations. Yes, the court has said that there is deference given to the district court judges, but that deference is not absolute, as this court has done before in Concienzia and Gonzalez. District courts sometimes do abuse their discretion in declining to excuse a juror. And in those cases, I'm sorry, there's only one juror, and those were an aggravated identity theft case and a cocaine distribution case. And there was only one juror in each of those cases that had some similar experiences and never made an unequivocal commitment to remain fair and impartial. And here, we have two jurors who said a lot more than, I just have similar experiences with the subject matter of this case, or I'm repulsed by the subject matter or sexual fantasies, even between consensual adults. There were many areas of bias that were exposed after the written questionnaire. The written questionnaire provides a baseline, but the point of oral voir dire, as was the case in Skilling v. United States, where there was a written questionnaire and it was followed by oral voir dire, because it gives the parties and the court an opportunity to explore different areas that the jurors may not have even thought about when filling out the written questionnaire. I'd also point out that there were also some other jurors who were excused who had checked off, yes, against, next to general fairness related questions, but because of effective oral voir dire from the court and the parties, they discovered areas of bias that the jurors hadn't really thought about and said, oh, actually, I can't be fair. So, the general fairness related questions in the vacuum of filling out those questionnaires, you know, aspirationally or theoretically saying, yes, I could be fair, but when confronted with these very real feelings they were having and maybe realizing, oh, wait, or as Juror 30 said, I probably wouldn't be a good juror. Council, and this may not be germane to this issue, and maybe this isn't a record, but were we, I mean, not we, were the, was the trial judge and the trial lawyers, were they out of jurors? Was this the end of the voir dire array? No, Your Honor, we were certainly not out of jurors in this, yeah, and we were certainly not out of jurors in the Central District of California. But, I mean, like on that day, there were other non-struck jurors available? Yes, there were other non-struck jurors available, Your Honor, and I'd like to point out, this was one of the first jury trials back in the Central District of California back from the COVID-19 shutdown. So, everyone, you know, was trying to figure out how to move forward, and, you know. Well, so how many, so do we have on the record how many people were court excused because they said they couldn't be there? I can look that up for you, Your Honor, but I'm not, I can't exactly remember off the top of my head, but there were a number of people who were excused because, as Your Honor pointed out, this is a very sensitive subject matter, and a lot of people couldn't get over the fact, the subject matter couldn't get over, there were some jurors who heard that they would get to receive evidence of Mr. Pineda's prior conviction, and that was a deal breaker for them. Well, does it count against you, in the sense that deference is allowed to the district judge, that the district judge did excuse some people for court because the district judge, in watching their demeanor, looking at their questionnaire, all of that, said, hey, this is too steep a mountain to climb here, I'm going to court excuse you, and like what Judge Bennett's saying, there were other people out there, so this wasn't a district court that, you know, I'm just sort of asking the question, let's just say no one got court excused because they were upset about the subject matter. Is that part of the calculus that we look at? I mean, that the judge was looking at people, listening to what they said, and making judgments about whether they thought it could be fair, or they couldn't be fair, and. Well, Your Honor, I think, well, first, we have to look at the jurors who were seated, and whether they, their responses were sufficient under this court's case law. But I'd like to point out that the, this court can look at the district court's decision as an abuse of discretion in two ways. It could be, one, a legal error, thinking that the, let's say, Juror 17's response is that, you know, like, why is there a trial, honestly? And then say, I will try to be as fair as I can be, which is not saying I will be fair. A juror's oath, when they take the oath before the trial starts, it's not saying, will you try to be fair, it says, you will be fair and impartial. So, the district court may have, you know, misremembered the law that these aspirational statements do not count under this court's case law. Those do not count for the Sixth Amendment requirements. So, the court may have misremembered the law, and that could be a legal error. Another abuse of discretion is a factual misremembrance. The court may have thought that they did make unequivocal commitments to remain fair and impartial, both Juror 17 and 30, but that is not the case for either one. Let me ask you about that. So, for Juror Number 30, I'm on Year 16. Mr. Chemerinsky was the prosecutor. Yes. And he said, with regard to Juror 30, but I think that ultimately there is no reason to think her written questionnaire, she stepped off that position in any meaningful way. And the court said, on Year 16, I agree. Do you think that was a correct factual determination by the district court adopting what the prosecutor had said, that she hadn't stepped off the questionnaire in any meaningful way? No, Your Honor, I do not think that was a correct factual determination. But based on what the juror had said after she filled out that questionnaire, which was probably earlier that day or even the day before, and I'd like to just point out that she said, honestly, I think it's too strong for me. I will try to, but I don't know. So, that undermines any checkmarks she could have placed next to a general fairness-related question. And I'd like to point the court back to Juror 17, who said far more problematic things, and it wasn't in response to aggressive cross-examination. These were paragraph-length responses that he gave in response to open-ended questions, saying, why are we even here? Like, why is there a trial? Then he recounted his own, his friend's experiences with sexual abuse as children. And that, Your Honor. I'm sorry, we're out of time, and you're over time. Let me just make sure that my judges don't have any questions at this point. I don't. You can't move on. It's not. So, I'm going to give you some rebuttal time. But, Your Honor. Not probably your four minutes, but after I hear, I'll give you at least two minutes or two or three. Okay. Thank you. Good morning. Good morning, Your Honors. And may it please the Court. Amy Pomerance, on behalf of the United States. I should also note that I was one of the two AUSAs who tried this case. So, I can answer questions in that regard. I'd like to begin with the juror bias issue, since that's what we've been discussing. There are a few aspects of a jury trial that are more committed to the district court's discretion. The decision whether to excuse a prospective juror for actual bias. And the reason for this, the reason that deference to the district court is at its pinnacle in the Supreme Court's words, in evaluating actual bias claims, is that it's the district court who is best able to observe the juror's demeanor. Not just their words, but their tone, their volume, their cadence, the body language, the demeanor of the other people in the courtroom who may be asking the questions. And based on the totality of the voir dire, the district court can assess the credibility, whether this juror can, in fact, be fair and impartial. So, is it in the record how many other jurors were excused, court excused for similar reasons? Is that part of the record? I can go back and check, Your Honor. My recollection is that this was a unique voir dire process, born out of that specific moment where the courts had just opened, and there was the COVID surge, the Delta surge. And so, the question was, how can we have a safe trial? And how can we have voir dire in this case, given the nature of a case where jurors feel comfortable discussing their personal experiences, in a way? And so, that's why we had that written questionnaire, followed by this individual voir dire procedure, which I have to emphasize, I've never seen done in federal court before, where the juror comes in one by one, stands at the lectern, and is essentially cross-examined by skilled counsel with no preparation or training. Now, my recollection is that there were some jurors who were struck for clause. So, that wasn't the typical voir dire, where you have all of the people, and then you tell people, perhaps, if you have something confidential, you can ask to be. No, this. Almost like on capital cases, where you do people one by one and death qualify them. Yes, Your Honor. This was a much more intimidating experience. Well, what about, just before I forget, I think Judge Bennett discussed with your friend on the other side, what authority can you cite for the proposition that a juror's answer to a written question may be sufficient to overcome the juror's admission of bias during the voir dire? I think the question, Your Honor, is when you look at the totality of the record, the totality of both the written statements and the oral colloquies, whether the district court could reasonably conclude that these jurors could be fair and impartial. And the question on appeal. So, I'm sorry, counsel. So, with regard to what I read, your friend, on ER 16, where the court decided not to strike Juror 30, where your trial colleague said, but I think, ultimately, there is no reason to think her written questionnaire, she stepped off that position in any meaningful way. And the district court said, I agree. Was that a correct, factual finding by the district court, given the transcript we have in front of us? I believe it was, Your Honor. And I can walk through Juror 30's answers more closely. But essentially. Why don't you give me your best shot from the written transcript as to where you think Juror 30 said she could be fair and impartial. I have ER 518 to 524 in front of me. Why don't you give me your best shot at the best answer for you? Okay, Your Honor. Well, I do think that we have to start with the premise that in the written questionnaire. The written questionnaire. The written questionnaire. Okay. But I want you to tell me from what came after that. Okay. When she came in, the district court initially directs her to question 36 of the questionnaire, so that question asked her about her views on ER 518. Okay. Okay. And the district court says, now you indicated an answer to question 36. You said that things, Ralph, role playing, that adults should not be engaged in coping strategies. The district court then goes on to explain that fantasies with minors are distasteful. They're not a legal violation. She says she understands. She understands. She understands. But. That there's a difference. There's a difference. So she understands that. Then, if you look at the bottom of page 519, the district court asks her, do you think there would be anything about your background, about your personal experience. Oh, and by the way, before that, she has affirmed that she understands presumption of innocence. She's affirmed that she understands that government has to prove the elements beyond a reasonable doubt. She's affirmed that. And then the district court circles back. Says, is there anything about your background, your personal experiences that would prevent you from being fair and impartial to both sides in this case? She says, I don't think so. Now, on a cold record, you can look at I don't think so and seem. That's the start, right? That's the start. That's the start. And then she says, okay. Now, when she's, her language, I don't think so. She's really mirroring the court's language there, where the court says, do you think? And both this court and the Supreme Court have noted that jurors are human. They don't always. But after that, the defense counsel says, would it be difficult for you to be fair in this case? I don't know. And then the defense counsel says, do you feel like your feelings about this case are too strong and you wouldn't be able to set them aside? I will try to, but I don't know. Do you think it would be difficult for you to look at the charges without being biased? I, it would be yes. I would think so. And then finally, the district court, there is a possibility you could be fair. I will try my best. It's a possibility. You know, I just, I just don't see it, counsel. So I would direct you back to the bottom of 520, where defense counsel, in her cross-examination, says, I want to follow up on the question 36. So she's following up on question 36, which again, directs her to her statement that she doesn't believe adults should fantasize about teenagers. They're talking about the fantasies. And that's when she says, well, a child is so innocent. Why would you want to think about innocent kids like that? I have nieces and nephews. They're teenagers. I do not want people to see them and fantasize about that. So again, at this point, I think we're in the world that Judge Callahan says where that's a reasonable sentiment that she doesn't want people fantasizing about her teenage relatives. And then the defense lawyer goes on. Well, what was your reaction when you read the description of what the case is about? And she says, I think that is awful. And again, we're back in the world where you can think that what the case is about, i.e. the enticement of minors, you can think that is awful as a general subject matter. That does not mean that you're actually biased in that you cannot fairly evaluate the evidence. And again, what the prosecutor, I mean, the defense counsel says, so it sounds like given your feelings about your children and your nieces and nephews, it would be difficult for you to look at charges like that without being biased. It would be yes, I would think so. And because you don't think you could be fair, and I just, I don't see, even though I do see the one place she said it after that, there are like five or six answers. Where it's like, I can't be fair, or I don't know if I can be fair. Or there's a possibility I could be fair. What the district court determined was that this whole exchange, where again, if you're looking at the top of 522, she says, do you think you would have an open mind about that? In other words, that there is referring back to what they were just talking about, i.e. the nature of the case, i.e. the enticement of minors. So she's asking, do you think you would have an open mind about the enticement of children? And she says, I don't know. But right after that, you wouldn't be able to put those feelings aside. I will try to, but I don't know. I will try to, but I don't know. And then she goes on, and here, I think the district court reasonably determined that these answers, that this juror at this point is feeling very pressured. That she's feeling badgered. That if you look, the questions are incredibly leading. That the defense lawyer is putting words in her mouth. You wouldn't be able to put those feelings aside, would you? It sounds like giving your feelings about your niece and nephew, which at this point, all she has said about her niece and nephew is that she doesn't want pedophiles fantasizing about them, and then the defense lawyer says, it would be difficult for you to look at those charges without any bias. Isn't that right? And of course, at that point, she's feeling the pressure. She says, it would be yes. I don't, I didn't think so, but. The court summarizes at the end, 523, line 17, well, let me ask you. You don't think you could be fair. That's the court, I guess, what the court's leading question. Is it a possibility you could be fair? I will try my best. Do you think that answer satisfies the Sixth Amendment? I think in this context, it does, Your Honor. First of all, I would direct your attention to the United States v. Fuller. It's an unpublished case, but the court said essentially that it was not an abuse of discretion where a juror used that kind of language. I think it was, I will try my best. And of course, in the context, the district court reasonably determined that that was a statement that she would be able to be very impartial. And in this case, because the warranty record is so extensive with all of the written questionnaires, answers, and the tenor of the questioning during the courtroom, I think it is fair that we defer to the district court's determination that when she said, I will try my best, and you will try to follow the law, yes, unequivocal, yes. You don't have a problem with the presumption of innocence, no, unequivocal, no. And then when the government lawyer tried to point out that, hey, you knew all about the case, you knew what the defense was, you knew what the subject matter was, and you repeatedly said unequivocally that you could be fair and impartial. You just did that this morning, earlier, do you still feel that way? And she was like, oh, you guys are crushing me, I don't know. And so the district court could look at this entirety of this exchange combined with her written answers and reasonably conclude that she could serve fairly impartially in this case. You know, the question in this case is not whether pedophilia is good or bad. The question was actually very narrow, in which the defendant's intent. There was no question the defendant was attracted to children, the only question, and there was no question the defendant was the one who engaged in extensive communications with a person who claimed to be a 14-year-old boy. The question for the jury was who would the defendant think he was talking to? The government's view is that the whole time he thought he was talking to a real 14-year-old boy. I mean, honestly, I want to push back a little. I mean, to me here, the government, from what I could see, had overwhelming evidence and really pressed hard on jurors 17 and 30. And if there's a problem with that, it lies, in my view, at the feet of the government, not at the feet of the defendant, who I agree was convicted on overwhelming evidence, but there's no overwhelming evidence, harmless error, exception to the Sixth Amendment actual bias rule. Well, I disagree that the government was the one pressing hard on both these defendants. But I actually think, with respect to juror 17, if the court's focused on kind of the final answer, juror 17 said, I would let the defendant know that as a citizen of this country, I would do my best to be as impartial as I can be. Now, understanding that jurors have not been briefed or prepped, I think this is a very robust affirmation of this prior, unequivocal affirmations of impartiality that were in the written questionnaire. Now, juror 17 had said, yes, it is a disturbing subject matter. He said, yes, he had a visceral reaction to the response to the case. But throughout, he affirmed that he did separate his personal views from the evidence. That's at ER 458, reproduced at page 31 of the government brief. I think, overall, juror 17's answers reflect a juror who was trying to be conscientious and candid and thorough. He says he, you know, had some people in his life that maybe had some experiences, but he doesn't really know enough about their situation. And he acknowledged explicitly that he knows this trial is not about his friend's experience. He understood the difference between his own personal views and what he's being asked to do as a juror, and invoked his duty as a citizen of the country to be impartial. I think that is robust affirmation, and it's not a Sixth Amendment violation. If you go back for a moment, you're a juror of 30. So, looking at 523 of the record, and the colleagues have reviewed it back and forth. The judge, at the end of the day, if you could respond to this argument, who is there, is, who asked questions, and he said, is it a possibility that you could be fair? That's described as a kind of a leading question. And the answer was, I will try my best. And you had, and there were, I think, three times in the written questionnaire, where the juror had essentially, had said, yes, I can be fair and impartial. And what is the best case that you can cite to us, you know, other than an unpublished decision? Yes. Which stands for the proposition that even though the answer by the juror, I will try my best, isn't the same as perhaps a saying, I know I can be impartial. That the determination of a judge to sit that, a juror, is not an apiece of discretion. Yes, Your Honor. Well, first of all, I think all of the case, published cases, stand for the proposition that you have to look at the record in totality and defer to the discretion of the district court. And so, it's not just that one, I will try my best language that we're looking at in a vacuum. We're looking at the totality of all of her statements. The best case of the government is Alexander, Your Honor. I think that the cases cited by the defense, Gonzalez and Kachetzian, are materially different in two key respects. First, in both those cases, the court emphasized that never once did the jurors in those two cases affirmatively commit to impartiality. So, that's immediately different from the situation where they initially made several unequivocal commitments to impartiality in the written questionnaire. The second key difference is that in Gonzalez and Kachetzian, and also actually in Alexander as well, there was a concern about the potential source of bias. And this comes across most forcefully in Gonzalez. If you look at it, that was a cocaine distribution case. And the juror issue had disclosed that her husband, in fact, dealt cocaine. That his drug dealing was the reason for the divorce, and it was very painful. And so, the court reasoned, well, you know, in this situation, because of her personal connection, her personal experience, that gives us greater concern about the equivocal language that she used. And so, Gonzalez, of course, said it was an abuse of discretion. Kachetzian, similarly, the court reads a general statement about what that case was about, which in that case was an unauthorized access device, identity theft case. And juror number three, I believe it was, initially raises her hand, discloses that she has been a victim of identity theft. And so, based on that, she comes in initially, immediately, with equivocal language. I might be able to be fair, but honestly, I'm not sure. Now, this case is obviously very different. And actually, Alexander, which is the strongest case, the strongest published case for the government, the two jurors in that case had also both been robbery victims in a case involving armed robbery. And so, let me ask you this, have either 17 or 30, is it in the record whether they've had past jury service? Let me check your honor, the reason I'm asking is, having done a lot of blood deal in my lifetime, although be it some time ago, because I've been an appellate judge for a pretty long time, you know, we're asking people to say how they think they would be many times in experiences that they've never had. Okay, so, you know, perhaps if you would ask me whether I could be fair, I've had a few more opportunities to be challenged. I, you know, I've decided, I've decided court trials, I've decided, you know, I've seen a lot of cases and all, but a lot of times what you get are you get a bunch of people that have not been on jury service before, and then you're asking them, well, could you be fair? Or, and they say, if they say, I think I could, if they said, well, I absolutely can be, could we, could I say, well, hey, you don't really know, you've never been a juror. You know, you're kind of being overconfident on that. I think that's a great point, your honor, and I think it's especially true in a case involving a difficult subject matter like this. Now, on page 8 of the government supplemental excerpts of record, juror 17 indicates that he has never served on a jury before. I would also actually call the court's attention to question 39 on the questionnaire, which is the last question asked and the nature of the case. And again, I didn't emphasize this in the brief because I actually didn't catch it until preparing for this oral argument, but that's another point where the question asked, given the nature of a charge against defendant, do you hold any strong opinions or convictions that you believe would prevent you from being a fair juror? Following the instructions in this case, and the court gives him, juror 17, no. Juror 30, again, and I'm on page 24 of the government supplemental excerpts of record, says no. And this question immediately follows the question 36 that she seemed to struggle with about whether it was inappropriate for individuals with a sexual interest in minors to engage in coping strategies. Juror 30, going back to Judge Callahan's question, indicates yes, she has served on a trial jury, but it was civil. So again, this is not a subject matter that she has grappled with, and I think the transcript, the record here reflects jurors who are trying to be conscientious and honest and thorough in examining kind of their own beliefs about the subject matter. But ultimately, at the end of the day, even if your honor believes that this is a close call and you might have gone the different way had you been a trial judge, unless there is a manifest error, which on this next record with the written questionnaire and the oral court here with the attorney directed for a jury, which I have to emphasize again, is very unusual in this district, I think the district court was reasonable to conclude that she could be very impartial despite her hesitations about her own discomfort, about people fantasizing about her teenage relatives. And if I may, is it, again, looking at the transcript, you are 523, and the defense counsel phrases the questions, and we've gone over this already in terms of, okay, we want to try to be fair, so it sounds like even though you want to be, you don't think you could be, is that right? It could be fair, and her answer is, I don't know what to say. And then it goes on, you don't know what to say, and the judge is taking this all in, of course. And isn't this part of the, the argument, is this part of the credibility determinations that the judge is hearing all this? It is ultimately, in the context of the written responses, you know, the unequivocal written responses, satisfying, you know, himself, that the juror could be fair. That's exactly right, Your Honor, and that's exactly, again, why the Supreme Court has said that deference to the district court needs to be at its pinnacle in these sorts of juror-biased determinations, because what the district court is assessing is not just the perspective juror's demeanor, but the demeanor of defense counsel in asking these questions. You know, if you look at some of this, I'm looking at the middle of page 523, the defense lawyer asks, because you don't think you can be fair, thank you, I appreciate that. No response from juror 30, so the district court could reasonably conclude that this equivocation wasn't her ultimate answer about her ability to serve fairly, to judge whether the defendant had the criminal intent, whether the government met its burden of proof with the evidence. The judge concluded based on its own questioning of the juror and based on the written questionnaire where she repeatedly affirmed that she could do this despite knowing the subject matter, the defense theory, you know, what her family situation was. She knew all these things when she signed the written questionnaire under penalty of perjury, and the district court reasonably concluded that she could be fair, and unless there is a manifest error, an abuse of discretion, which this case is a far cry from those two cases Gonzales and Kitchazian where they never once affirmatively say they could be impartial, where they had strong personal connections, were a victim of the crimes that were charged, this case is very, very different. And I think on this mixed record, even though it may be a difficult call two years later on a cold record, in the room we have to defer the district court's determination based on the evidence. We'll have to find out if either side has more questions. We don't. We've taken this intentionally over. Thank you. We appreciate it. If you have any questions. All right, just to sort of even things out, I'll give you four minutes on the model. So, it's rough evening, evening out. Thank you, Your Honor. First, I'd like to quickly answer Your Honor's question. Based on my calculations, I believe there were 11 jurors who were dismissed for cause in this case. And I'm glad the government mentioned that, you know, this might be a close call and a, quote, mixed record, because I think the one very, very well-established principle of law that has kind of fallen by the wayside in this argument in this case is that both Kitchazian and Gonzales, we don't have to decide whether the jurors were actually biased. We don't even have to decide whether their commitments were actually unequivocal, because they both said any doubts remaining at the end of the day about a juror's bias must be resolved against the juror. That's the law. Because the unequivocal commitment does not mean we get to come up here and have a debate as to whether these jurors actually said they could be fair or sometimes said they checked, yes, I can be fair. Then after their biases are exposed, said, actually, I don't know if I can be fair. Unequivocal is not, sure, yeah, I would like to think I could. Unequivocal is not, my first reaction was, well, this doesn't, why are we here? If he was caught and busted in things, yeah, like, why is there a trial, honestly? Unequivocal is not, I would do my best to try to be as impartial as I can be. The 6th Amendment doesn't ask for you to try to be as impartial as you can be. The case law in the 6th Amendment requires you to make an unequivocal commitment to be fair and impartial. So we're not questioning these jurors' beliefs and views. We're saying, we acknowledge that you have these views. But we're talking about sitting on a jury. This is not a value judgment on these individuals. And the fact and the law that doubts regarding juror bias are resolved against a juror makes sense because the remedy for this is excusing the juror and moving on to the next prospective juror. We're not, at that point, it's not throwing the entire government's case away. It's not having everyone start over. It's just moving on to the next juror. So when we talk about discretion to the district court, yes, there is a legal error here. Because it does. I acknowledge that it's kind of unusual to have jurors have to stand at a podium and get cross-examined on body or by the prosecutor and the defense counsel. The only place I've ever seen it has been in death penalty cases, essentially, where you've death-qualified a jury. Well, Your Honor, I think that speaks to the need, and the parties have the court's recognition here, to get it right. To make sure that this is the first trial, one of the first trials back from COVID. And this is sensitive subject matter with possible, it could be laid in with biases on the part of prospective jurors. So we're trying to get it right. And there are two jurors who slipped through the cracks. The judge made a legal error in maybe not thinking that doubts about juror bias are resolved against the juror, and we move on to the next juror. The judge might have misremembered what the jurors actually said, that, as Your Honor pointed out, I will try to be fair is not sufficient under Gonzales. I could change it. Well, I was interested to hear when the prosecutor said, would you, that I will try was a response to a question, would you try? Yes, Your Honor. If someone asked me, would you try to be fair, I would say yes, I would try to be fair. And should I be penalized for not saying the magic words when I'm answering the question that was asked of me? Well, I'd like to point out that the response to I will try was in response to, will you try to follow the court's instructions? And as this court cited, Contenzian, questions about presumption of innocence and the burden of proof are not the same as the question about fairness and impartiality. So we can't transpose the I will try to follow directions and I will try to, or I do understand the presumption of innocence. We can't transpose those yeses to an unequivocal commitment on a fair and impartial presumption of different principles. Unless my colleagues have questions. You're over, I'm sorry. Oh, go ahead, Senator. With respect to the case law, which has been cited. Yes. I'm wondering if you could just sort of explain to me sort of the relationship between Alexander Gonzalez and Kajetsian. Yes, Your Honor. So. Because Alexander seems like it would lead to a different result. No, Your Honor. In Alexander, there were two jurors at issue in that case, and both had had prior experiences being victims of armed robbery. One, for one juror, the question was not closed for this court. This court said that, let me first start by saying that the jurors' statements in that case were, I believe so, in response. The court said that the district court did not abuse its discretion. Correct. For one. I think that juror's statement was equivalent to saying that she would be impartial. Saying that, I will believe so. So one juror said, I believe so, and later said yes. And this court noted that the yes served as a final affirmative unequivocal commitment. While the question was a closer call for the second juror, there was just that one statement saying, I believe so, which is more along the affirmative lines of thinking that, yes, I believe I can do it. Not, I will try. Not, I will try to be as impartial as I can be. And I think that's where the line of cases diverges. So in Alexander, the court looked at jurors who said, I believe so. And that was it. Those were the only statements that the court was examining at the time. For Conchetti and Gonzalez, it's, I will try to. I will try, right? I will try. So one represents a belief in an affirmative step toward that belief. And then the other is an attempt, as opposed to any acknowledgement or any affirmative step in the direction of making an unequivocal commitment. And here, we just don't have even, I believe so. We have, I will try. We have, I don't know. And those are not unequivocal, and they do not satisfy the Sixth Amendment. So for those reasons, we ask this court to reverse and remand for a new trial. Thank you both for your helpful argument in this matter. It's always a pleasure to have lawyers that are very familiar with the record and prepared to argue the cases. And you both acquitted yourself very well. Thank you, Your Honor. Thank you. This matter is submitted.
judges: CALLAHAN, BENNETT, Katzmann